UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NAJELA DRICE,

                     Plaintiff,

     - against -

MY MERCHANT SERVICES, LLC, and
JOSE A. VALERIO, *individually*,

                    Defendants.
-----------------------------------------------------------------X

Case No.: 15-cv-0395 (MKB) (MDG)

**DECLARATION OF PLAINTIFF**

Plaintiff, NAJELA DRICE, declares, pursuant to 28 U.S.C. § 1746 and subject to the penalties of perjury, that the following is true and correct:

1. I am the plaintiff in the present action for failure to pay owed wages, and being caused to suffer sexual harassment and discrimination based on my gender (female).

2. I was hired by Wesley Daguir ("Daguir") of Defendant My Merchant Services, LLC ("Defendant My Merchant") on or about April 28, 2014 for the position of "Funding Specialist/Sales Associate." We agreed that I would be paid wages that would eventually be drawn against earned commission, as the position was usually only a commission-based position. Defendant My Merchant agreed to pay me about $300.00 per week until commission was earned, and that I would be paid weekly. Defendant Jose A. Valerio ("Defendant Valerio") explicitly agreed to this.

3. The next day, on or about April 29, 2014, I began working for Defendant My Merchant and on May 5, 2014, I was paid $300 per the agreement for my first week of work.

4. During my employment, I was continuously subjected to sexual harassment and discrimination based on my gender, all of which created a hostile and intimidating work

**EXHIBIT A**

environment. Specifically, Defendant Valerio continuously propositioned me and subjected me to unwelcomed and offensive comments and conduct of the sexual nature.

5. I met Defendant Valerio for the first time on May 5, 2014. When we met, Defendant Valerio told me to meet him in the hallway for a one-on-one meeting. During our one-on-one meeting, I soon realized that Defendant Valerio was being overly flirtatious in his body language, facial expressions, and hand gestures towards me.

6. The following day, on or about May 6, 2014, as I was preparing to leave work for the day, Defendant Valerio approached me, squeezed my hand, handed me his business card, winked at me in a flirtatious manner, and told me to call him. Although Defendant Valerio's behavior made me extremely uncomfortable, I decided not to say anything because I was scared I would lose my job.

7. On or about Wednesday, May 7, 2014, Defendant Valerio asked me to go to lunch or happy hour with him the following day (Thursday, May 8, 2014). I did not say anything in response. That same day, Defendant Valerio approached me and showed me a photograph of a Haitian girl that he stated he met on the train. He then stated that "this Haitian girl is beautiful, just like you" (addressing me, a Haitian).

8. The following day, May 8, 2014, I called in sick. However, throughout the day while I was home sick, Defendant Valerio repeatedly called my cell phone. On some of these instances, he left voicemails. Defendant Valerio also called and did not leave voicemails approximately five times. He also sent me multiple text messages that were unwelcome and offensive.

9. Specifically, in the voicemails, Defendant Valerio called me "beautiful," offered to help me with anything I may need, and referred to me as his "little Haitian princess."

10. As for the text messages, at or around 11:59 AM, Defendant Valerio text-messaged me, "I don't know why yet. But I will am [sic] looking at you with care and loving;" "If you need anything. Please let me know. I will fly over there."

11. At or around 4:36 PM, Defendant Valerio text-messaged me stating, "How is my little princess doing?"

12. Defendant Valerio's unwelcome romantic overtures caused me to feel alarmed. Nevertheless, I needed the job with Defendant My Merchant, and returned to work on or about Friday, May 9, 2014.

13. During an afternoon break, on or about Friday, May 9, 2014, I left the office and walked down the sidewalk outside the office in order to make some calls on my cell phone in private.

14. Defendant Valerio followed me out of the office and waited several minutes outside the office while watching me use my cell phone. Then, Defendant Valerio walked down the block to where I was standing, approached me, kissed his own fingers and touched my forehead with the fingers he kissed. While doing this he made a "muahh" noise so as to simulate him giving me a kiss.

15. I was stunned by Defendant Valerio's inappropriately intimate gesture. I felt violated and felt unable to respond. However, I decided to return to the office and finish out the work day.

16. At the end of the work day, on or about Friday, May 9, 2014, I did not receive my anticipated weekly payment. I then called Defendant Valerio on the telephone.

17. During our conversation, Defendant Valerio told me that although we had come to an agreement, the agreement was an exception to his general rule, and therefore, he was not going to pay me for my work that week.

3

18. I became very upset as Defendant Valerio had been subjecting me to sexual harassment and was now not even going to pay me. I went home upset.

19. That evening (Friday, May 9, 2014) Defendant Valerio called me at approximately 11:56 PM and left a voicemail stating that he wanted to see me and talk to me that evening. I did not respond.

20. The following morning (Saturday, May 10, 2014), Defendant Valerio again called me multiple times around 9:30 AM. When I did not answer, Defendant Valerio text-messaged me stating, "Good morning. My beautiful Haitian girl. We need to talk. Am going to give you an offer you can't refuse. Am going to put you on a salary base position. I have a check for you. Don't ask me why. But I like you. And that's a great reason to take great care of you. I want you in [sic] my side on my team. Can I count on you. Please call me you beautiful Haitian princess. Muahhhh."

21. However, when I responded via text message and inquired about where and when I could pick up the check and whether he would be willing to put the proposed new payment structure in writing, Defendant Valerio became abusive and proceeded to insult me. He accused me of having an "attitude problem" and proclaimed that "being pretty wasn't enough to get by in life."

22. I felt that I could not rely on Defendant Valerio to act in good faith as my employer and it became clear to me that my hiring was actually a rouse to engage me romantically.

23. I felt that I could no longer return to work because I was not able to tolerate the unwelcomed sexual advances by Defendant Valerio. This, along with his refusal to pay me my earned pay or even minimum wage, made me believe that I could not return to work because it was simply too unbearable.

24. I feel I was subjected to a hostile work environment and that I was discriminated against on the basis of my gender.

25. In addition, I felt then, and still continue to feel, offended, disturbed, and humiliated by the Defendant Valerio's actions. I have suffered, and continue to suffer, from severe anxiety and depression as a result of Defendants' sexual harassment and discrimination during my employment.

26. I declare under penalty of perjury and upon personal knowledge that the foregoing is true and correct.

Dated: New York, New York
April 10th, 2015

_____
Najela Drice

Sworn to before me this
10th Day of April, 2015

_____
NOTARY PUBLIC

NICOLE ANN WELCH
Notary Public, State of New York
No. 02WE6291880
Qualified in New York County
Commission Expires October 21, 20__

5