**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

NAJELA DRICE,                                               Case No.: 15 cv 395 (MKB) (MDG)

                    Plaintiff,

      - against -

MY MERCHANT SERVICES, LLC, and
JOSE A. VALERIO, *individually*,

                    Defendants.

-------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF A
MOTION FOR DEFAULT JUDGMENT**

**PHILLIPS & ASSOCIATES,**
**Attorneys at Law, PLLC**
Casey Wolnowski, Esq. (CW9371)
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
cwolnowski@tpglaws.com

# TABLE OF CONTENTS

*Preliminary Statement*……………………………………………………………………..1

*Statement of Facts*………………………………………………………………………2

*Argument*…………………………………………………………………………………..4

    I.     Plaintiff is entitled to entry of default against
          Defendants………………………………………………………………………4

          A.  The Well-Pleaded Allegations in the Complaint
              Must be Accepted as True……………………………………………………6

    II.    The Court May Set Damages Without an Inquest……………………………….7

    III.   Plaintiff's Damages Calculations………………………………………………9

          A.  Lost Wages (Unpaid Minimum Wages) …………………………………….9

          B.  Liquidated Damages Under the FLSA and NYLL…………………………….9

          C.  Plaintiff Can Recover Liquidated Damages
              Under Both the FLSA and the NYLL………………………………………11

          D.  Individual Liability…………………………………………………………13

          E.  Compensatory Damages Under Title VII and the NYCHRL…………………14

          F.  Emotional Distress Damages under Title VII
              and the NYCHRL……………………………………………………………...14

          G.  Plaintiff is Entitled to Prejudgment Interest………………………………….16

          H.  Plaintiff is Entitled to Her Reasonable Attorneys'
              Fees and Costs……………………………………………………………16

*Conclusion* ………………………………………………………………………………18

# TABLE OF AUTHORITIES

<u>Case</u>                                                                                                    <u>Page</u>

*ACME Widget, L.P. v. Q Investors Group, Inc.*, 10 CV 2204 (SLT),
2012 U.S. Dist. LEXIS 28896 (E.D.N.Y. Feb. 10, 2012)……………………………………………..5

*Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504 (2d Cir. 1991)………………………………..7

*Alston v. Northstar La Guardia LLC*, 10 Civ. 3611 (LAK) (GWG),
2010 U.S. Dist. LEXIS 90958 (S.D.N.Y. Sep. 3, 2010)……………………………………………5

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182, 186 (2d Cir. 2008)………………………………………………………………………17

*Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305 (S.D.N.Y. 1998)………………………...10-11

*Baratto v. City of New York*, 2002 WL 31926130 (Sup. Ct. N.Y. County 2002)……………...14

*Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157 (E.D.N.Y. 2006)…………………………15

*Brock v. Wilamowsky*, 833 F.2d 11 (2d Cir. 1987)……………………………………………………12

*Cadlerock Joint Venture, L.P. v. Prado*, No. 07 Civ. 1207 (JS) (WDW),
2008 U.S. Dist. LEXIS 80924 (E.D.N.Y. Oct. 7, 2008)…………………………………………..5

*Callier v. Superior Bldg. Servs., Inc.*, 09 Civ. 4590 (ILG)(JMA),
2010 U.S. Dist. LEXIS 140232 (E.D.N.Y. Dec. 22, 2010)………………………………………12

*Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725 (DC),
2010 U.S. Dist. LEXIS 109373 (S.D.N.Y. Sep. 30, 2010)………………………………………10

*Carter v. Frito-Lay, Inc.*, 425 N.Y.S.2d 115 (N.Y. App. Div. 1980)……………………………12

*Cesario v. BNI Constr., Inc.*, 07 Civ. 8545 (LLS) (GWG),
2008 U.S. Dist. LEXIS 103155 (S.D.N.Y. Dec. 15, 2008)………………………………………..7

*Chandler v. Bombardier Capital, Inc.,* 44 F.3d 80 (2d Cir. 1994)………………………………...16

*Chanel, Inc. v. Jean-Louis*, 06-cv-5924 (ARR)(JO),
2009 U.S. Dist. LEXIS 113910 (E.D.N.Y. Dec. 7, 2009)………………………………………7

*Citigroup Global Mkts., Inc. v. JWS 1999 Holding B.V.*,
No. 08 Civ. 5362 (RJS), 2009 U.S. Dist. LEXIS 83776 (S.D.N.Y. Sep. 12, 2009)……………5

*City of New York v. Golden Feather Smoke Shop, Inc.*, 08-CV-3966 (CBA),
2011 U.S. Dist. LEXIS 149748 (E.D.N.Y., Dec. 30, 2011)……………………………………….6

*Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D.N.Y. 2005)…………………………11

*Doo Nam Yang v. ACBL Corp. et al*, 04 Civ. 8987 (LBS),
2006 U.S. Dist. LEXIS 6919 (S.D.N.Y. Feb. 22, 2006)…………………………………………17, 18

*Duffy v. Modern Concrete Corp.*, 07-CV-962(JS)(AKT),
2008 U.S. Dist. LEXIS 121592 (E.D.N.Y. Mar. 25, 2008)………………………………………...6

*Equal Employment Opportunity Commission v. Fox News Network, LLC*,
2006 WL 2546884 (S.D.N.Y. 2006)…………………………………………………………..15

*EEOC v. Sage Realty Corp.*, 507 F. Supp. 599 (S.D.N.Y. 1981)…………………………….13

*Epstein v. Kalvin-Miller Int'l, Inc.*, 139 F. Supp. 2d 469 (S.D.N.Y. 2001)………………………16

*Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38 (2d Cir. 1989)……………………………7

*Gesualdi v. Mack Excavation & Trailer Serv.*, 09-CV-2502 (KAM)(JO),
2010 U.S. Dist. LEXIS 23620 (E.D.N.Y. Mar. 15, 2010)……………………………………7

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998)……………………………………………16

*Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992)…………..6

*Griffin v. Astro Moving & Storage Co.*, 11-CV-1844 (MKB),
2015 U.S. Dist. LEXIS 43326 (E.D.N.Y. Mar. 31, 2015)……………………………………..12

*Gurung v. Malhotra*, 851 F. Supp. 2d 583, 593 (S.D.N.Y. 2012)……………………………11-12

*Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)………………………….12

*Howard Johnson Intern., Inc. v. Wang*, 7 F. Supp. 2d 336 (S.D.N.Y. 1998)………………………6

*Insinga v. Coop. Centrale Raiffeisen Boerenleenbank B.A.*,
478 F. Supp. 2d 508, 512 (S.D.N.Y. 2007)…………………………………………………...16, 17

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013)…………………………………………...13

*Jin v. Pac. Buffet House, Inc.*, CV-06-579 (VVP),
2009 U.S. Dist. LEXIS 74901 (E.D.N.Y. Aug. 24, 2009)………………………………………8

*Kopec v. GMG Constr.*, 09-CV-2187 (KAM) (ALC),
2010 U.S. Dist. LEXIS 104844 (E.D.N.Y. Sep. 10, 2010)………………………………………9

*Kopec v. GMG Constr.*, 09-CV-2187 (KAM) (ALC),
2011 U.S. Dist. LEXIS 72441 (E.D.N.Y. Jul. 6, 2011)……………………………………………9

*Kriss v. Schenectady City School District*, 2011 WL 2912843 (N.D.N.Y. 2011)…………………15

*Lanzetta v. Florio's Enterprises, Inc.*, 08 Civ. 6181 (DC),
2011 U.S. Dist. LEXIS 85613 (S.D.N.Y. Jul. 27, 2011)……………………………………………12

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998)……………………………………………18

*Li Ping Fu v. Pop Art Int'l Inc.*, 10 Civ. 8562 (DLC) (AJP),
2011 U.S. Dist. LEXIS 113614 (S.D.N.Y. Sep. 19, 2011)……………………………………………10

*Magnoni v. Smith & Laquercia, LLP*, 661 F. Supp. 2d 412 (S.D.N.Y. 2009)……………………8

*Martin-Trigona v. Belford,* 763 F.2d 503 (2d Cir. 1985)……………………………………………6

*Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp.*,
No. 02 Civ. 9044 (LTS) (GWG), 2003 U.S. Dist. LEXIS 6881 (S.D.N.Y. Apr. 28, 2003)………4

*Mendez v. Nooch, Inc.*, 07 Civ. 11174 (LLS),
2009 U.S. Dist. LEXIS 25114 (S.D.N.Y. Mar. 6, 2009)……………………………………………7

*NYC Transit Auth. v. State Div. of Human Rights*, 581 N.Y.S.2d 426 (N.Y. App. Div. 1992)…..15

*Padilla v. Manlapaz*, 643 F. Supp. 2d 302 (E.D.N.Y. 2009)……………………………………………10

*Perero v. Food Jungle, Inc.*, 05 CV 4347 (JG), 05 CV 5169 (JG), 05 CV 5170 (JG),
2006 U.S. Dist. LEXIS 73409 (E.D.N.Y. Aug. 7, 2006)……………………………………………16

*Pineda-Herrera v. Da-Ar-Da, Inc.*, 09-CV-5140 (RLM),
2011 U.S. Dist. LEXIS 57121 (E.D.N.Y. May 26, 2011)……………………………………………13

*Reilly v. NatWest Mkts. Group Inc.,* 181 F.3d 253, 265 (2d Cir. 1999)…………………11, 12, 16

*Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224 (2d Cir. 2006)……………………………17

*Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381 (E.D.N.Y. 2007)……………………………8

*Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 144-45 (2d Cir. 1993)…………………………14

*Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014)………………………………13

*Shapiro, Bernstein & Co. v. Continental Record Co.*,
386 F.2d 426 (2d Cir. 1967) (per curiam)……………………………………………………5

*Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380 (E.D.N.Y. 2013)…………………………………..8

*Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326 (2d Cir. 1993)………………16

*U.S. v. Sabhnani*, 599 F.3d 215 (2d Cir. 2010)…………………………………………………………11

*Worthen-Caldwell v. Special Touch Home Care Services*,
2009 WL 7289829 (Sup. Ct. Kings County 2009)…………………………………………………14

*Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008)…………………....10, 11, 12

*Yu Y. Ho v. Sim Enters.*, No. 11 Civ. 2855 (PKC),
2014 U.S. Dist. LEXIS 66408 (S.D.N.Y. May 14, 2014)……………………..…………..10, 12

## Statutes & Regulations

29 U.S.C. § 203(d)……………………………………………………………………………..13

29 U.S.C. § 216(b)………………………………………………………………………….....10, 17

29 U.S.C. § 211(c)…………………………………………………………………………………..8

29 U.S.C. § 260…………………………………………………………………………………….10

New York Business Corporation Law § 306……………………………………………………….6

N.Y. Lab. Law § 2…………………………………………………………………………………13

N.Y. Lab. Law § 198…………………………………………………………………………....10, 17

N.Y. Lab. Law § 198(1-a)…………………………………………………………………………10

N.Y. Lab. Law § 663(1)……………………………………………………………………………10

N.Y. Lab. Law § 652(1)……………………………………………………………………………13

29 C.F.R. § 516.2(a)………………………………………………………………………………..8

N.Y. C.P.L.R. § 5001(b)…………………………………………………………………………16

## Rules

Fed. R. Civ. P. 12(a)(1)(A)(i) ..............................................................................................4

v

Fed. R. Civ. P. 55(b) ........................................................................................................5

Fed. R. Civ. P. 55(b)(2)………………………………………………………………18

*Preliminary Statement*

Plaintiff Najela Drice ("Plaintiff") is entitled to judgment by default under Rule 55(b) against Defendants My Merchant Services, LLC ("My Merchant") and Jose A. Valerio ("Valerio") (together "Defendants") because none of the Defendants have appeared in this action nor answered the pleadings, despite Plaintiff properly serving them, and the Clerk of the Court, accordingly, has entered default against them.

The factual allegations in the Complaint fully support each of the alleged causes of action. Furthermore, Plaintiff has sufficiently established the basis for her request for damages through her submissions.

Plaintiff alleges that while she was employed she was not paid for at least one workweek for which she worked compensable hours. Specifically, she was not paid minimum wage nor the promised weekly payment. In addition, Defendants subjected her to sexual harassment and discrimination on the basis of her gender (female) throughout her employment with Defendants. Ultimately, this unlawful discrimination led to Plaintiff's constructive discharge for failing to heed to Defendant Valerio's constant barrage of romantic gestures and advances.

Defendants have damaged Plaintiff emotionally and financially as a result of the aforementioned violations of the law. Given Defendants' failure to appear and defend, this Court should find that Defendants violated the Fair Labor Standards Act ("FLSA"), the New York Labor Law, Title VII of the Civil Rights of 1964 ("Title VII"), and the New York City Human Rights Law ("NYCHRL"). These violations justify a grant of default judgment in an amount equal to Plaintiff's owed minimum wages earned, liquidated damages under the FLSA and NYLL, Plaintiff's emotional distress damages, and her reasonable attorneys' fees and costs.

1

### *Statement of Facts*

On or about April 28, 2014, Defendant My Merchant hired Plaintiff for the position of "Funding Specialist/Sales Associate." (Drice Decl. at ¶2.)[1] Plaintiff and Defendant My Merchant, through its agent Wesley Daguir, agreed that she would be paid approximately $300 per week until commission was earned (i.e. – a draw against commission). (Drice Decl. at ¶2.) Plaintiff began working on April 29, 2014, and was paid the $300 for this first week of work. (Drice Decl. at ¶3.)

Plaintiff was continuously subjected to sexual harassment and discrimination based on her gender (female), all of which created an extremely hostile and intimidating work environment. In sum, Defendant Valerio continuously propositioned Plaintiff and subjected her to unwelcome and offensive sexual comments. When Plaintiff first met Defendant Valerio in a one-on-one meeting, Defendant Valerio was overly flirtatious in his body language, facial expressions, and hand gestures towards her. (Drice Decl. at ¶5.) On March 6, 2014, Defendant Valerio approached her, squeezed her hand, handed her his business card, winked at her, and told her to "call me." (Drice Decl. at ¶6.) Plaintiff felt as though she had no choice but to remain at this job and not complain, as she believed refusing his advances and complaining would put her job at risk. (Drice Decl. at ¶6.)

The sexual harassment only became more direct. On Wednesday, May 7, 2014, Defendant Valerio asked Plaintiff to go to lunch or happy hour with him the following day; she did not respond. (Drice Decl. at ¶7.) The same day, Defendant Valerio approached Plaintiff with a photograph of a Haitian girl he said he met on the train. He showed it to her and said "this Haitian girl is beautiful, just like you." (Drice Decl. at ¶8.) The next day when Plaintiff called out sick, Defendant Valerio called numerous times, leaving voicemails in which he called her "beautiful"

---

[1] Attached as Exhibit A.

2

and referred to her as his "little Haitian princess." (Drice Decl. at ¶9.) This same day he constantly sent text messages to Plaintiff, stating "I don't know why yet. But I will am [sic] looking at you with care and loving;" "If you need anything. Please let me know. I will fly over there;" "How is my little princess doing?" These actions only further made Plaintiff feel alarmed and harassed. (Drice Decl. at ¶13.)

Defendant Valerio's harassment went above and beyond mere words, and escalated to physical interactions. On Friday, May 9, 2014, Plaintiff briefly left her office to make some personal telephone calls outside in private. Defendant Valerio followed her out of the office and watched her use her cell phone. Then, after waiting several minutes, he approached her, kissed his fingers, touched her forehead with the fingers he kissed, all while making a "muahh" noise. (Drice Decl. at ¶15.) Plaintiff, in complete shock, felt violated and unable to respond. (Drice Decl. at ¶16.) Once again, because she could not afford to lose her job, she returned to the office that day and finished the working day. (Drice Decl. at ¶16.)

Defendant Valerio's harassment also had consequences on Plaintiff's rate of pay. This same day, Friday, May 9, 2014, Plaintiff did not receive her anticipated weekly payment. (Drice Decl. at ¶18.) When she spoke with Defendant Valerio about this, he told her he would not pay her for any work that week. (Drice Decl. at ¶18.) That same evening, Defendant Valerio called her at approximately 11:56 PM, and left a voicemail that he wanted to see her that evening. (Drice Decl. at ¶20.) The following morning (Saturday, May 10, 2014), Defendant Valerio again called Plaintiff multiple times around 9:30 AM. (Drice Decl. at ¶21.) When Plaintiff did not answer, Defendant Valerio text-messaged her:

> Good morning.  My beautiful Haitian girl.  We need to talk.  Am going to give you an offer you can't refuse.  Am going to put you on a salary base position.  I have a check for you.  Don't ask me why.  But I like you.  And that's a great reason to take great care of you.  I want you in my side on my team.  Can I count on you.  Please call me you beautiful Haitian princess.  Muahhhh.

(Drice Decl. at ¶21.)  When Plaintiff asked Defendant Valerio when and where she could pick up her paycheck, he became abusive and accused her of having an "attitude problem" and proclaimed that "being pretty wasn't enough to get by in life."  (Drice Decl. at ¶22.)  At this point Plaintiff felt that she could not rely upon the Defendants for a healthy work environment, and could not tolerate the unwelcomed sexual advanced by Defendant Valerio.  (Drice Decl. at ¶¶23-24.)

Due to Defendants' sexual harassment and gender discrimination and the constructive discharge caused by their actions, Plaintiff felt then, and still continues to feel, offended, disturbed, and humiliated.  (Drice Decl. at ¶26.)  She has suffered, and will continue to suffer, from severe anxiety and depression as a result of Defendants' actions.  (Drice Decl. at ¶26.)

### *Argument*

## I.  Plaintiff is Entitled to an Entry of Default Against Defendants

A default judgment should be entered against each of the Defendants.  Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), a defendant has twenty-one (21) days from service of a summons and complaint to file an answer; otherwise, he is in default.  *See Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp.*, No. 02 Civ. 9044 (LTS) (GWG), 2003 U.S. Dist. LEXIS 6881, at *2 (S.D.N.Y. Apr. 28, 2003).  Here, all Defendants, individually and together, have failed to answer despite being properly served.

Plaintiff commenced this action on January 26, 2015 by filing the Summons and Complaint with this Court.  (Wolnowski Decl. at ¶12.)  A copy of the Summons and Complaint was served on Defendant Valerio on February 6, 2015 by personal service, and proof of such service was filed

4

on February 20, 2015 with the Court.  (Wolnowski Decl. at ¶13.)  Two copies of the Summons

and Complaint were served on Defendant My Merchant Services via service on the New York

Secretary of State in Albany, and proof of service was filed on February 20, 2015 with the Court.

(Wolnowski Decl. ¶14.)

To date, none of the defendants have responded to the Complaint.  Accordingly, entry of

default is appropriate in light of Defendants' nonresponsiveness.  *See Citigroup Global Mkts., Inc.*

*v. JWS 1999 Holding B.V.*, No. 08 Civ. 5362 (RJS), 2009 U.S. Dist. LEXIS 83776, at *2 (S.D.N.Y.

Sep. 12, 2009) ("'Entry of a default judgment is appropriate when the adversary process has been

halted because of an essentially unresponsive party.'") (quoting *Cadlerock Joint Venture, L.P. v.*

*Prado*, No. 07 Civ. 1207 (JS) (WDW), 2008 U.S. Dist. LEXIS 80924, at *2 (E.D.N.Y. Oct. 7,

2008)).  That no attorney has appeared on behalf of the corporate defendant also warrants an entry

of default.  *See ACME Widget, L.P. v. Q Investors Group, Inc.*, 10 CV 2204 (SLT), 2012 U.S. Dist.

LEXIS 28896, at *7 (E.D.N.Y. Feb. 10, 2012) ("[B]ecause the defendant is a corporation, the

defendant's failure to obtain counsel constitutes a failure to defend because corporations cannot

proceed *pro se* in federal court.") (citing *Shapiro, Bernstein & Co. v. Continental Record Co.,* 386

F.2d 426, 427 (2d Cir. 1967) (per curiam)).

Moreover, a Clerk's Certificate of Default already has been filed, so Plaintiff is entitled to

an entry of default by virtue of the defendants' failures to answer the Complaint or otherwise

defend against the lawsuit. *See* Fed. R. Civ. P. 55(b); *Alston v. Northstar La Guardia LLC*, 10 Civ.

3611 (LAK) (GWG), 2010 U.S. Dist. LEXIS 90958, at *3 (S.D.N.Y. Sep. 3, 2010) ("In light of

[the defendant's] default, [the plaintiff's] properly-pleaded allegations, with the exception of those

relating to damages, are accepted as true.").

To determine whether to enter a default judgment, courts review the following three

factors: (1) whether the default was willful; (2) whether the non-defaulting party would be prejudiced if entry of a default judgment is delayed; and (3) whether the defaulting party has a potentially meritorious defense. *See Duffy v. Modern Concrete Corp.*, 07-CV-962(JS)(AKT), 2008 U.S. Dist. LEXIS 121592, at *3 (E.D.N.Y. Mar. 25, 2008).   As a general rule, by defaulting and not opposing a motion for a default judgment, Defendants have willfully failed to answer or respond. *See Id.*; *Howard Johnson Intern., Inc. v. Wang,* 7 F. Supp. 2d 336, 341 (S.D.N.Y. 1998). As to the corporate defendants in particular, each has an obligation to keep its current address on file with the New York State Secretary of State, and a failure to do so is a breach of its obligations under the New York Business Corporation Law § 306.  *See Martin-Trigona v. Belford,* 763 F.2d 503, 506 (2d Cir. 1985) (finding that failure to keep its address current with the Secretary of State is a willful default).  A finding of willfulness is appropriate here.

Plaintiff submits that there is no reason to delay the entry of a default judgment. Defendants (individually and together) have willfully refused to respond to the Complaint and Plaintiff will be prejudiced if forced to wait in perpetuity for them to decide whether to respond to the Complaint. *See Duffy*, 2008 U.S. Dist. LEXIS 121592 at *4.  Accordingly, the Court should enter a default judgment against Defendants.

**A.  The Well-Pleaded Allegations in the Complaint Must Be Accepted As True**

It is well settled that a defendant who fails to answer is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability.  Notably, "[a] defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages." *City of New York v. Golden Feather Smoke Shop, Inc.*, 08-CV-3966 (CBA), 2011 U.S. Dist. LEXIS 149748, at *2 (E.D.N.Y., Dec. 30, 2011) (citing *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  Thus, Plaintiff is entitled to a Judgment on her claims against Defendants.

## II.  The Court May Set Damages Without an Inquest

The Second Circuit has held that an inquest into damages may be held on the basis of documentary evidence "as long as the Court has ensured that there was a basis for the damages specified in the default judgment." *Cesario v. BNI Constr., Inc.*, 07 Civ. 8545 (LLS) (GWG), 2008 U.S. Dist. LEXIS 103155, at *3 (S.D.N.Y. Dec. 15, 2008) (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

Because Defendants have failed to respond to Plaintiff's Complaint, the Court should assume that Plaintiff's testimony as to the agreement reached as to compensation between Plaintiff and Defendants, and the length of time she was employed by Defendants, are true and reasonable for the purposes of this motion.  Moreover, where the employer is in default, a plaintiff is permitted to rely on her recollections to establish damages.  Here, Plaintiff's sworn declaration detailing the owed wages, sexual harassment, and gender discrimination suffices to establish damages. *See Chanel, Inc. v. Jean-Louis*, 06-cv-5924 (ARR)(JO), 2009 U.S. Dist. LEXIS 113910, at *11 (E.D.N.Y. Dec. 7, 2009) ("Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." (citing *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)); *Gesualdi v. Mack Excavation & Trailer Serv.*, 09-CV-2502 (KAM)(JO), 2010 U.S. Dist. LEXIS 23620, at *3 (E.D.N.Y. Mar. 15, 2010) (declarations and other documentary evidence sufficient to establish damages without a hearing); *Mendez v. Nooch, Inc.*, 07 Civ. 11174 (LLS), 2009 U.S. Dist. LEXIS 25114, at *6-7 (S.D.N.Y. Mar. 6, 2009) (awarding damages based on plaintiffs' submissions "which [are] unrebutted by defendants").

Furthermore, while employees seeking unpaid wages under the FLSA usually bear the initial burden of proving that they performed work for which they were not properly compensated, courts are mindful of the fact that the employer bears the onus to maintain these records.   Under the FLSA, employers must "make, keep, and preserve" records of the wages and hours of their

employees. 29 U.S.C. § 211(c); *see also Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 387 (E.D.N.Y. 2013) (finding that employers have a duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment) (citation omitted).

The Department of Labor has enacted regulations that detail the precise records an employer must keep on every employee. *See Solis*, 938 F. Supp. 2d at 387.  An employer is required to state, among other things, "the time of day and day of week on which the employee's workweek begins," "hourly rate of pay for any workweek in which overtime compensation is due," "the monetary amount paid on a per hour, per day, [or] per week ... basis," the "hours worked each workday and total hours worked each workweek," "total daily or weekly straight-time earnings or wages  due for hours worked ... exclusive of premium overtime compensation" and "total premium pay for overtime hours." 29 C.F.R. § 516.2(a); *see Solis*, 938 F. Supp. 2d at 387-88.

Thus, "[w]here an employer fails to keep and preserve the proper records, the Supreme Court has established a burden-shifting approach for making determinations of fact concerning wages paid and hours worked."  *Jin v. Pac. Buffet House, Inc.*, CV-06-579 (VVP), 2009 U.S. Dist. LEXIS 74901, at *15 (E.D.N.Y. Aug. 24, 2009).  The employee does not need documentary evidence to satisfy her burden; she can rely on her recollection alone. *See, e.g., Id.*; *Magnoni v. Smith & Laquercia, LLP*, 661 F. Supp. 2d 412 (S.D.N.Y. 2009); *Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007).  Further, "the employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records." *Rivera,* 497 F. Supp. 2d at 389.

Therefore, because Defendants have failed to respond to Plaintiff's Complaint and Plaintiff's motion for damages, Plaintiff's testimony as to her employment duties, the hours she worked, her manner of pay, and Defendants' withholding of compensation are uncontested and

"the Court will assume them to be correct for the purpose of this motion." *Kopec v. GMG Constr.*, 09-CV-2187 (KAM) (ALC), 2010 U.S. Dist. LEXIS 104844, at *3 (E.D.N.Y. Sep. 10, 2010), rev'd on other grounds, *Kopec*, 2011 U.S. Dist. LEXIS 72441 (E.D.N.Y. Jul. 6, 2011).  Accordingly, it is submitted that Plaintiff's declaration sufficiently establishes the basis for her request for damages, and thus, no inquest is necessary.

## III.  Plaintiff's Damages Calculations

### A.  Lost Wages (Unpaid Minimum Wages)

Under both the FLSA and NYLL, Plaintiff is entitled to no less than the applicable minimum wage for each hour worked during her employment with Defendants.  In 2014, the applicable minimum wage was $8.00 per hour.  Effective December 31, 2014, the minimum wage increased to $8.75 per hour.

Plaintiff was never paid at least the minimum wage for any hours worked.  As a full-time employee, Plaintiff worked forty (40) hours per week during her employment, and only received the agreed upon $300.00 for her first week.  (Drice Decl. at ¶¶2-3, 16, 17, 21.)  When this amount is divided by 40 hours, the hourly rate is $7.50, $.50 under the applicable minimum wage in 2014.  (Wolnowski Decl. at ¶5.)  Therefore, for this week, Plaintiff is owed $20.00, the difference between what she was paid and what the minimum wage required.  For her second week of work, Plaintiff is entitled to $320.00 (40 hours x $8.00 per hour).  Thus, Plaintiff is owed $340 in unpaid minimum wages.

### B.  Liquidated Damages Under the FLSA and NYLL

In addition to her actual unpaid minimum wages, both the FLSA and the NYLL provide for the payment of liquidated damages to employees who have been denied wages.

"Under the FLSA, a plaintiff is entitled to liquidated damages of 100%." *Li Ping Fu v.*

9

*Pop Art Int'l Inc.*, 10 Civ. 8562 (DLC) (AJP), 2011 U.S. Dist. LEXIS 113614, at *3 (S.D.N.Y. Sep. 19, 2011).  A plaintiff who demonstrates that she was improperly denied regular wages and overtime may recover, in addition to reimbursement of unpaid wages, an amount equal to the unpaid wages unless the employer demonstrates that it acted in good faith and had reasonable grounds for believing that it had not violated the FLSA.  *See Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008) (citing 29 U.S.C. §§ 216(b), 260).  "[T]he employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness . . . [t]he burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the norm, single damages the exception." *Id*. (citation omitted).

Under the NYLL, a plaintiff may also recover one hundred percent (100%) of her unpaid wages as liquidated damages where his employer's violation was willful. N.Y. Lab. Law §§ 198(1-a), 663(1); *see Yu Y. Ho v. Sim Enters.*, No. 11 Civ. 2855 (PKC), 2014 U.S. Dist. LEXIS 66408, at *n. 2 (S.D.N.Y. May 14, 2014) ("As of April 9, 2011, the NYLL provides for liquidated damages in an amount equal to 100% of unpaid wages due.").  "A willful violation is one where the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Cao v. Wu Liang Ye Lexington Rest., Inc*., No. 08 Civ. 3725 (DC), 2010 U.S. Dist. LEXIS 109373, at *5-6 (S.D.N.Y. Sep. 30, 2010) (internal citations and quotations omitted).  An employee need not show malice or bad faith to establish willfulness on the part of an employer, as required to support award of liquidated damages, under New York labor law.  *See Padilla v. Manlapaz*, 643 F. Supp. 2d 302 (E.D.N.Y. 2009).

Indeed, a defendant's mere assertion that it believed in good faith that its actions were lawful does not defeat a finding of willfulness under the NYLL.  *See Ayres v. 127 Restaurant Corp*., 12 F. Supp. 2d 305 (S.D.N.Y. 1998).  In *Ayres*, the employer asserted that it believed in

10

good faith that its practice was legal at the time it engaged in the illegal conduct. The Court however rejected the employer's assertion that it did not act willfully as a matter of law, noting that there was "no evidence . . . that [the employer] made reasonable inquiries into the relevant law, or that it actually reviewed its own . . . practices, or that it relied on the advice of counsel as to the lawfulness of . . . [its practice]." *Id.* Consequently, the Court in *Ayres* awarded plaintiff liquidated damages. *See also Doo Nam Yang v. ACBL Corp*., 427 F. Supp. 2d 327 (S.D.N.Y. 2005) (the Court awarded liquidated damages representing 100 percent of the total wages owed to the employee, based on employer's failure to show good faith failure to pay overtime wages, as the employer had not made any effort to comply with the FLSA's record-keeping requirements). Here, Defendants' failure to compensate Plaintiff for all hours worked was certainly willful.

### C. Plaintiff Can Recover Liquidated Damages Under Both the FLSA and the NYLL

The liquidated damages provisions of the FLSA and NYLL serve two distinct purposes. Liquidated damages under the FLSA are compensatory, rather than punitive. *See, e.g., Yu G. Ke,* 595 F.Supp.2d at 261-62; *see also U.S. v. Sabhnani*, 599 F.3d 215 (2d Cir. 2010) (Liquidated damages under the FLSA are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA. In contrast, liquidated damages under the NYLL are punitive, and effectuate in a manner as "to deter an employer's willful withholding of wages due." *Reilly v. NatWest Mkts. Group Inc.,* 181 F.3d 253, 265 (2d Cir. 1999).

Given the provisions' distinct purposes, this Court should allow Plaintiff to recover liquidated damages under both sets of laws. District courts in this Circuit are divided on whether plaintiffs may recover liquidated damages under both FLSA and NYLL. *See Gurung v. Malhotra*, 851 F. Supp. 2d 583, 593 (S.D.N.Y. 2012). Nevertheless, the majority position is that plaintiffs

11

may recover under both the FLSA and NYLL because the liquidated damages provisions serve the fundamentally different purposes discussed above.  *Id.*; *see also Griffin v. Astro Moving & Storage Co.*, 11-CV-1844 (MKB), 2015 U.S. Dist. LEXIS 43326, at *18 (E.D.N.Y. Mar. 31, 2015); *Yu Y. Ho*, 2014 U.S. Dist. LEXIS 66408, at *48; *Yu G. Ke*, 595 F.Supp.2d at 261-62 ("[A] prevailing plaintiff who can justify both [FLSA] liquidated damages and state-law [liquidated] damages should be eligible to recover both, since they ... serve fundamentally different purposes.") (internal quotation marks omitted); *Lanzetta v. Florio's Enterprises, Inc.*, 08 Civ. 6181 (DC), 2011 U.S. Dist. LEXIS 85613, at *5-6 (S.D.N.Y. Jul. 27, 2011); *Callier v. Superior Bldg. Servs., Inc.*, 09 Civ. 4590 (ILG)(JMA), 2010 U.S. Dist. LEXIS 140232, at *3 (E.D.N.Y. Dec. 22, 2010).

Courts adopting the majority position have further explained the difference. Liquidated damages under FLSA are the functional equivalent of prejudgment interest; they are "not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999).  Liquidated damages under the New York Labor Law, by contrast, are punitive in nature; they "'constitute a penalty' to deter an employer's willful withholding of wages due." *Reilly*, 181 F.3d at 265 (quoting *Carter v. Frito-Lay, Inc.*, 425 N.Y.S.2d 115, 116 (N.Y. App. Div. 1980)).  Further, one district court has noted that upon establishing an employer's willfulness, the language of both FLSA and the NYLL appears to require that a plaintiff be awarded liquidated damages.  *See Lanzetta*, 2011 U.S. Dist. LEXIS 85613, *see also Brock v. Wilamowsky*, 833 F.2d 11, 20 (2d Cir. 1987) ("The Act does not authorize the court to decline to award liquidated damages, in whole or in part, unless the employer has established its good-faith, reasonable-basis defense.").

As all of the conduct complained of falls within the respective statutes of limitations under

both the FLSA and NYLL and the underlying differences liquidated damages serves under the two sets of laws, this Court should follow the majority trend and award Plaintiff liquidated damages equal to 100% of her owed minimum wages under both the FLSA and NYLL.

### D.  Individual Liability

To be held liable under the FLSA, a defendant must be an "employer," which the FLSA broadly defines to include individuals "acting directly or indirectly in the interest of an employer." 29 U.S.C. § 203(d).  Similarly, the NYLL applies to "employers," including in that term an "owner" or "proprietor." N.Y. Lab. Law §§ 2, 652(1); *See Pineda-Herrera v. Da-Ar-Da, Inc.*, 09-CV-5140 (RLM), 2011 U.S. Dist. LEXIS 57121, at *2 (E.D.N.Y. May 26, 2011).

As such, it is clear that imposing individual liability on Defendant Valerio would be proper under both statutes.  Defendant Valerio possessed control over Defendant My Merchant's operations as related to Plaintiff by controlling her hours, her rate of pay, and her ability to actually receive compensation for hours worked.  (Drice Decl. ¶ 18.)  This is sufficient under the FLSA and NYLL, which view such individuals as "employers" and imposes liability upon them.  *See, e.g.*, *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013) ("To be held liable as an employer under FLSA, an individual defendant must possess control over a company's actual operations in a manner that relates to a plaintiff's employment."); *Schear v. Food Scope Am., Inc*., 297 F.R.D. 114, 134 (S.D.N.Y. 2014) ("[d]istrict courts in this Circuit have interpreted the definition of employer under the New York Labor Law coextensively with the definition used by the FLSA.").  Accordingly, Defendants My Merchant and Valerio are each individually liable for the failures to legally compensate Plaintiff for her unpaid overtime wages.  *See EEOC v. Sage Realty Corp.,* 507 F. Supp. 599, 613 (S.D.N.Y. 1981).

### E.  Compensatory Damages Under Title VII and the NYCHRL

Plaintiff is entitled to back pay due to Defendants' violations of Title VII and the NYCHRL.  It is well-settled that a plaintiff who is actually or constructively terminated in a wrongful discharge is entitled to recover fully for the losses sustained, including back pay.  *See, e.g.*, *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 144-45 (2d Cir. 1993).

Here, Plaintiff is entitled to back pay in the amount of $2,240.00.  (Wolnowski Decl. ¶ 8.) This is calculated based upon the minimum wage in 2014 of $8.00 per hour, for a period of approximately eight (8) weeks (May 12, 2014 to June 30, 2014) while Plaintiff was out of work. Thus, the Court should award a total of $2,240.00 in back pay to Plaintiff.

### F.  Emotional Distress Damages Under Title VII and the NYCHRL

Under Title VII and the NYCHRL, Plaintiff is entitled to emotional distress damages to address the harm Defendants caused her due to the unlawful hostile work environment and constructive termination.  In *Worthen-Caldwell v. Special Touch Home Care Services*, 2009 WL 7289829 (Sup. Ct. Kings County 2009), the plaintiff claimed that she was sexually harassed by her employer, and that she suffered from emotional and psychological distress, as well as anxiety as a result of her working situation.  The jury found that the defendants were liable for sexual harassment under the NYCHRL, and awarded the plaintiff $1,860,000.00 for past and future emotional distress.

In *Baratto v. City of New York*, 2002 WL 31926130 (Sup. Ct. N.Y. County 2002), a police officer alleged that he was subjected to physical and verbal harassment by other officers who perceived him as gay and that his supervisors failed to take any action on the hostile work environment.  The defendant denied the allegations but agreed to a settlement with the plaintiff in the amount of $1,200,000.00.

In *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157 (E.D.N.Y. 2006), the Court found that the plaintiff suffered from Generalized Anxiety Disorder due to the defendants' discrimination, and awarded the plaintiff $600,000.00 for his emotional injuries.

In *NYC Transit Auth. v. State Div. of Human Rights*, 581 N.Y.S.2d 426 (N.Y. App. Div. 1992), the plaintiff testified that she suffered anguish, guilt, depression, and anger at each of four intentional episodes of sex discrimination, and was awarded $450,000.00 for her emotional distress injuries.

In *Kriss v. Schenectady City School District*, 2011 WL 2912843 (N.D.N.Y. 2011), a custodial supervisor sued the defendant claiming sex discrimination in violation of Title VII. The plaintiff alleged that his former supervisor subjected him to a hostile work environment and sexual harassment, resulting in an anxiety disorder and medical leave, and subsequently, terminated him. The defendant denied the allegations but agreed to a settlement with the plaintiff in the amount of $250,000.00.

In *Equal Employment Opportunity Commission v. Fox News Network, LLC*, 2006 WL 2546884 (S.D.N.Y. 2006), three female employees claimed that they were subjected to gender-based discrimination and sexual harassment in violation of Title VII due to their supervisor's regular use of gross obscenities and vulgarities, such as "bitch" and "tits," and that such language was not used directed toward male employees. Although Defendants contended that Plaintiffs failed to utilize the company's EEO policies and procedures that governed the presentation and handling of employees' complaints, and further failed to identify any male co-workers who were the subject of treatment that was more favorable than the treatment that the plaintiffs received, the defendants nonetheless agreed to a settlement in the amount of $225,000.00.

15

Accordingly, it is submitted that Plaintiff's request for $60,000.00 in emotional distress damages is not unreasonable.

### G.  Plaintiff is Entitled to Prejudgment Interest

Plaintiff is also entitled to prejudgment interest at the current Federal statutory rate of twenty-two tenths of one percent (0.22%) on any award of damages under Title VII and the NYCHRL. *See Insinga v. Coop. Centrale Raiffeisen Boerenleenbank B.A.*, 478 F. Supp. 2d 508, 512 (S.D.N.Y. 2007); *Perero v. Food Jungle, Inc.*, 05 CV 4347 (JG), 05 CV 5169 (JG), 05 CV 5170 (JG), 2006 U.S. Dist. LEXIS 73409, at *8 (E.D.N.Y. Aug. 7, 2006).  In fact, in an action at law, prejudgment interest is recoverable as of right.  *See Trademark Research Corp. v. Maxwell Online, Inc.,* 995 F.2d 326, 342 (2d Cir. 1993).  Further, under New York and federal law, prejudgment interest compensates the plaintiff for the defendants' interest-free use of the plaintiff's money.  *See Reilly,* 181 F.3d at 265 (2d Cir. 1999); *Gierlinger v. Gleason,* 160 F.3d 858, 874 (2d Cir. 1998); *Chandler v. Bombardier Capital, Inc.,* 44 F.3d 80, 83 (2d Cir. 1994).

As to the date from which interest is to be calculated, N.Y. C.P.L.R. § 5001(b) states that, "interest shall be computed from the earliest ascertainable date the cause of action existed," and "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred." N.Y. C.P.L.R. § 5001(b); *See also Epstein v. Kalvin-Miller Int'l, Inc.,* 139 F. Supp. 2d 469, 485-86 (S.D.N.Y. 2001).  Plaintiff estimates prejudgment interest based upon Plaintiff's damages to be approximately $132.00.  (Wolnowski Decl. ¶18.)

### H.  Plaintiff is Entitled to Her Reasonable Attorneys' Fees and Costs

Plaintiff's claims also arise under statutory provisions that provide her reasonable attorneys' fees and costs.  In an action under the FLSA, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

defendant, and costs of the action." 29 U.S.C. § 216(b).  Fees and costs are also awardable under the NYLL. *See* N.Y. Lab. Law § 198.  And, Plaintiff's action to recover damages from Defendants for their discriminatory actions also warrants an award of attorneys' fees and costs.  *See* <u>Insinga</u>, 478 F. Supp. 2d at 512-13.

 "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 (2d Cir. 2008). The rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (citation omitted).  Here, the Court should find that all attorney hours spent on this case were reasonable under the circumstances and include every hour expended in its calculation of the presumptively reasonable fee.

Plaintiff's counsel–to wit, attorneys at a firm that specialize in employment law—seek a rate of $350.00 per hour.  Courts frequently have approved this rate for attorneys with similar experience. *See Doo Nam Yang v. ACBL Corp. et al*, 04 Civ. 8987 (LBS), 2006 U.S. Dist. LEXIS 6919, at *2-4 (S.D.N.Y. Feb. 22, 2006).  As detailed in Plaintiff's counsel's Declaration, the legal work in this matter included: drafting and filing the summons and complaint, drafting and filing the EEOC documents which were necessary prerequisites to bringing this action, discussing and reviewing the details of the complaint with Plaintiff, preparing calculations of damages and drafting a demand letter, preparing the filings in order to secure a certificate of default, and preparing the present motion.  (Wolnowski Decl. ¶20.)  Plaintiff's counsel has expended ten (10) hours in performing these legal services.  (Wolnowski Decl. ¶19.)  Plaintiff should therefore be

17

awarded $3,500.00 in attorneys' fees.

Plaintiff is also entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998); *See Doo Nam*, 2006 U.S. Dist. LEXIS 6919, at *2. Here, Plaintiff should thus recover her costs, which total $624.33. (Wolnowski Decl. ¶¶21-23). These expenses are comprised of $400.00 in the court filing fee, $170.00 in process server fees, $40.00 in a filing fee with the New York Secretary of State, and $14.33 in postage costs. (Wolnowski Decl. ¶¶ 21-23).

### Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her motion for a default judgment against Defendants pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and award damages in the amounts set forth herein and schedule an inquest (if the Court deems necessary) to determine the amount of emotional damages to which Plaintiff is entitled.

Dated: New York, New York
      April 21, 2015

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By: _____
    Casey Wolnowski, Esq.
    *Attorneys for Plaintiff*
    45 Broadway, Suite 620
    New York, New York 10006
    (212) 248-7431
    cwolnowski@tpglaws.com

18