UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

NAJELA DRICE,

                              Plaintiff,

                                           REPORT AND
            - against -                    RECOMMENDATION

MY MERCHANT SERVICES, LLC, et ano,         CV 2015-0395 (MKB)(MDG)

                              Defendants.

- - - - - - - - - - - - - - - - - - -X

GO, United States Magistrate Judge:

     Plaintiff Najela Drice brings this action against defendants My Merchant Services, LLC ("My Merchant") and Jose A. Valerio alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the New York City Human Rights Law, New York City Administrative Code § 8-107(a) ("NYCHRL"), the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("Labor Law"), N.Y. Lab. Law, Art. 19 §§ 650 et seq.  In her complaint, plaintiff alleges that she was sexually harassed and discriminated against because of her gender and is owed unpaid minimum wages.

     Following defendants' failure to answer or otherwise respond to the complaint, the Honorable Margo K. Brodie referred to me plaintiff's motion for default judgment to report and recommend.

## FACTUAL BACKGROUND

     The following facts are taken from plaintiff's complaint.

In support of her motion for default judgment, plaintiff submitted a declaration which recites many of the allegations of the complaint verbatim.  See Drice Decl. (ct. doc. 10-1).  In addition, the Court heard testimony from plaintiff at an inquest hearing held on May 21, 2015.

On or about April 28, 2014, defendants hired plaintiff for the position of Funding Specialist/Sales Associate.  Complaint (ct. doc. 1) at ¶ 18.  Defendants agreed that plaintiff would be paid $300 per week to be credited against commissions earned. Id.  Plaintiff began working for defendants on April 29, 2014 and was paid $300 at the end of her first week of work.  Id.

On or about May 5, 2014, plaintiff met defendant Valerio, the President and Chief Executive Officer of My Merchant.  Id. at ¶¶ 11, 21.  Valerio exercised supervisory authority over plaintiff and had the power to hire, fire and affect the terms and conditions of plaintiff's employment.  Id. at ¶ 12.  During their one-on-one meeting, Valerio was overly flirtatious in his body language, facial expressions and hand gestures.  Id.  On or about May 6, 2014, as plaintiff was preparing to leave work for the day, Valerio squeezed plaintiff's hand, gave her his business card, winked at plaintiff and told her to "call [him]."  Id. at ¶ 22.  Although Valerio's behavior made plaintiff uncomfortable, she did not say anything for fear of losing her job.  Id.

On or about May 7, 2014, Valerio asked plaintiff to go to lunch or happy hour with him on the following day.  Id. at ¶ 23.

-2-

Later that day, Valerio showed plaintiff a photograph of a woman he had met on the train.  He then stated that "this Haitian girl is beautiful, just like you." Id. at ¶ 24.  On the following day, plaintiff called-in to work sick.  Id. at ¶ 25.  Throughout the day, Valerio called plaintiff's cell phone several times and sent her multiple text messages.  Id.  In the voicemails, Valerio said that plaintiff was "beautiful" and he offered to help plaintiff with anything she needs, referring to plaintiff as his "little Haitian princess." Id. at ¶ 26.  In one text message, Valerio wrote, "I don't know why yet.  But I will am [sic] looking at you with care and loving; if you need anything, please let me know.  I will fly over there." Id. at ¶ 27.

Despite being alarmed by Valerio's conduct, plaintiff returned to work on the following day, May 9, 2014. Id. at ¶ 29.  When plaintiff left the office for a break, Valerio followed plaintiff, approached her, kissed his fingers and touched plaintiff's forehead with the fingers he had kissed. Id. at ¶ 31.  While doing so, Valerio made a "muahh" sound so as to simulate kissing plaintiff. Id.

At the end of the work day, plaintiff did not receive her weekly pay. Id. at ¶ 33.  When she spoke to Valerio on the phone, he advised her that he was not going to pay her for her work that week. Id. at ¶ 34.  Later that evening, Valerio called plaintiff and left a voicemail stating that he wanted to see her that night. Id. at ¶ 36.  Plaintiff did not respond. Id.  The

-3-

next morning, Valerio called plaintiff again several times, but she did not answer his phone calls.  Valerio then sent plaintiff a text message stating, "Good morning, my beautiful Haitian girl. We need to talk.  Am going to give you an offer you can't refuse. Am going to put you on a salary base position.  I have a check for you.  Don't ask me why.  But I like you.  And that's a great reason to take great care of you.  I want you in my side on my team.  Can I count on you?  Please call me you beautiful Haitian princess, muahhhh."  <u>Id.</u> at ¶ 37.  Plaintiff responded by text message asking where and when she could pick up her check and whether Valerio would be willing to put in writing the salary structure he proposed.  <u>Id.</u> at ¶ 38.  In response, Valerio accused plaintiff of having an "attitude problem" and told her that "being pretty wasn't enough to get by in life."  <u>Id.</u>

Unable to tolerate the unwelcome sexual advances by Valerio and the refusal to pay her the wages she earned, plaintiff did not return to work.  <u>Id.</u> at ¶ 40.  She attempted to find new employment but was not able to get a job until one month later. Hearing Tr. at 15.

DISCUSSION

I.  <u>Default Judgment Standard</u>

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages.  <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Au Bon Pain Corp. v.</u>

-4-

Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011). However, the district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. See Greyhound, 973 F.2d at 159.

The court must also ensure that there is a reasonable basis for the damages specified in a default judgment. The moving party is entitled to all reasonable inferences from the evidence it offers. See Romanowicz, 577 F.3d at 84; Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

II. Liability

A. Title VII - Sexual Harassment

Under Title VII, it is unlawful for "an employer . . . to discriminate against any [employee] with respect to . . . sex." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment by a supervisor in the workplace because of the subordinate's sex violates Title VII's prohibition against sex discrimination. See Redd v. New York Div. Of Parole, 678 F.3d 166, 175 (2d Cir. 2012). Under the hostile work environment theory of sexual harassment, a plaintiff

-5-

can recover if she can show that the harassment was so "severe
and pervasive" as to "alter the conditions of [the victim's]
employment and create an abusive working environment." Meritor
Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986); Redd, 678
F.3d at 175; Alfano v. Costello, 294 F.3d 365, 373 (2d Cir.
2002).  "The kinds of workplace conduct that may be actionable
under Title VII . . . include 'unwelcome sexual advances,
requests for sexual favors, and other verbal or physical conduct
of a sexual nature.'"  Redd, 678 F.3d at 175 (quoting Meritor,
477 U.S. at 65).  The conduct must create an "objectively hostile
or abusive work environment" and the "victim must also
subjectively perceive that environment to be abusive."  Alfano,
294 F.3d at 374.  Isolated incidents usually will not suffice to
establish a hostile work environment.  See Redd, 678 F.3d at 175-
76.

An employer is presumptively liable for sexual harassment
where the plaintiff is harassed by someone with supervisory
authority over plaintiff.  See Redd, 678 F.3d at 183.  The
employer is strictly liable if the harassment culminates in
discharge of the employee.  Id. at 182.

Plaintiff's allegations that she was subjected to Valerio's
comments and physical touchings are sufficient to state a claim
for sexual harassment.  Valerio made several romantic overtures
to plaintiff and physically touched her in an unprofessional
manner.  I find that plaintiff's allegations show that the

working conditions were such that a reasonable person would have found the abuse so pervasive or severe as to alter her working conditions.  Thus, I recommend that default judgment be granted against My Merchant on this claim.

    B.   <u>NYCHRL Claims</u>

    The NYCHRL makes it unlawful for "an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a).  The NYCHRL "'was intended to be more protective than the state and federal counterpart,'" and thus "'the standard for maintaining a hostile work environment claim is lower under'" the NYCHRL.  <u>Rozenfeld v. Dep't of Design & Constr. of City of New York</u>, 875 F. Supp. 2d 189, 209 (E.D.N.Y. 2012), <u>aff'd</u>, 522 F. App'x 46 (2d Cir. 2013) (quoting <u>Bermudez v. City of New York</u>, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011)); <u>see</u> <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268, 278 (2d Cir. 2009).

    Having found that plaintiff has established liability against My Merchant under Title VII for sexual harassment, plaintiff has also established the corporate defendant's liability under the NYCHRL.

    "'An individual defendant may also be held personally liable

-7-

under the NYCHRL if he participates in the conduct giving rise to the discrimination claim,'" since, unlike Title VII, the NYCHRL provides for direct individual liability. See Rodriquez v. Express World Wide, LLC, 2014 WL 1347369, at *4 (E.D.N.Y. 2014) (quoting Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009)). The NYCHRL provides for individual liability regardless of "'ownership or decisionmaking power.'" Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349 (S.D.N.Y. 2012) (quoting Banks v. Corr. Servs. Corp., 475 F. Supp. 2d 189, 199 (E.D.N.Y. 2007)).

Plaintiff has established the direct liability of defendant Valerio for sexual harassment. As the perpetrator of the sexual harassment, Valerio is unquestionably individually liable under the NYCHRL.

In sum, I respectfully recommend granting plaintiff's motion for default judgment against My Merchant under Title VII and the NYCHRL for sexual harassment and against defendant Valerio under the NYCHRL for sexual harassment.

C.    FLSA and New York Labor Law

Plaintiff brings claims under the FLSA alleging that defendants violated section 206 of the statute and claims under the New York Labor Law.

1.    FLSA

The FLSA was enacted by Congress "to protect all covered workers from substandard wages and oppressive working hours,

-8-

'labor conditions [that are] detrimental to the maintenance of
the minimum standard of living necessary for health, efficiency
and general well-being of workers.'"  Barrentine v. Arkansas-Best
Freight Sys. Inc., 450 U.S. 728, 739 (1981) (quoting 29 U.S.C.
§ 202(a)) (footnote omitted).  Section 206 of the FLSA sets forth
a minimum hourly wage employers must pay their employees who
engage in work affecting interstate commerce.  29 U.S.C.
§ 206(a)(1)(C). Employers in violation of this provision "shall
be liable to the employee or employees affected in the amount of
their unpaid minimum wages, . . . and in an additional equal
amount as liquidated damages."  Id. § 216(b).

       a.   Interstate Commerce Requirement

     An employer is liable for wages under the FLSA if it hires
an employee who either: 1) is engaged in commerce or in the
production of goods for commerce or 2) is employed by an
enterprise engaged in interstate commerce or in the production of
goods for interstate commerce.  29 U.S.C. §§ 203(r),(s), 207(a).
Under the FLSA, an "enterprise" is an entity engaged in
interstate commerce that has no less than $500,000 in annual
gross volume of sales.  See 29 U.S.C. § 203(s).

     Plaintiff does not address the interstate commerce
requirement in the complaint although she alleges that gross
sales of My Merchant were over $500,000.  Compl. at ¶ 17.  As a
preliminary matter, this Court agrees with the view of courts
that the question of enterprise status is an issue that goes to

the merits of a plaintiff's claims rather than subject matter
jurisdiction.  <u>See</u> <u>Zhang v. Wen Mei Inc.</u>, 2014 WL 5470816, at *3
(E.D.N.Y. 2014); <u>Li v. Zhao</u>, 35 F. Supp. 3d 300, 303 (E.D.N.Y.
2014); <u>Monterossa v. Martinez Rest. Corp.</u>, 2012 WL 3890212 at *2
-3 (S.D.N.Y. 2012) (not imposing burden on plaintiff to establish
enterprise status in denying summary judgment motion) (collecting
cases); <u>Velez v. Vassallo</u>, 203 F. Supp. 2d 312, 333 (S.D.N.Y.
2002) (denying motion to vacate default judgment) (<u>citing</u> <u>Au Bon
Pain</u>, 653 F.2d at 65).  Several courts in this district have
inferred that enterprise coverage exists based on the nature of
the business conducted by the defendant employer.  <u>See, e.g.</u>,
<u>Bosoro v. Am Comprehensive Healthcare Med. Grp., P.C.</u>, 2015 WL
5676679, at *4 (E.D.N.Y. 2015); <u>Zhang</u>, 2014 WL 5470816, at *3;
<u>Klimchak v. Cardrona, Inc.</u>, 2014 WL 3778964, at *5 (E.D.N.Y.
2014); <u>Huerta v. Victoria Bakery</u>, 2012 WL 1107655, at *2
(E.D.N.Y. 2012) (rejecting magistrate judge's recommendation that
court could not infer that restaurant was engaged in interstate
commerce); <u>Li v. Cheng</u>, 2012 WL 1004852, at *5 (E.D.N.Y. 2012);
<u>Janus v. Regalis Const., Inc.</u>, 2012 WL 3878113, at *3 (E.D.N.Y.
2012); <u>Rodriguez v. Almighty Cleaning, Inc.</u>, 784 F. Supp. 2d 114,
121 (E.D.N.Y. 2011).  Indeed, courts have recognized that
"'virtually every enterprise in the nation doing the requisite
dollar volume of business is covered by the FLSA.'"  <u>Shim v.
Millennium Group</u>, 2009 WL 211367, at *3 (E.D.N.Y. 2009) (quoting
<u>Archie v. Grand Cent. P'ship, Inc.</u>, 997 F. Supp. 504, 530

(S.D.N.Y. 1998)).  "Even 'local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce.'"  Id.

Unfortunately, plaintiff does not describe the type of business in which defendants are engaged in the complaint, her affidavit or her testimony at the inquest hearing.  Based on the Court's independent research, the website for My Merchant Services, LLC states that it installs "POS systems and credit card terminals" at commercial locations.[1]  See http://www.mymerchantllc.com/home.html.  I infer based on the nature of the business that My Merchant is engaged in interstate commerce.  In any event, it would be inefficient to require plaintiff to file an amended complaint to add allegations regarding enterprise coverage.  Due to defendant's default, plaintiff would not be required to serve upon defendants an amended complaint with these additional allegations.  See Fed. R. Civ. P. 5(a)(2).  Therefore, I recommend finding that My Merchant is an enterprise engaged in commerce for purposes of the FLSA.

> b.  Employer

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation

---

[1] According to the website, My Merchant Service, LLC is located at 462 36th Street, Suite 3B, Brooklyn, NY 11232. Plaintiff alleges that My Merchant maintains its principal place of business at the same address.  Compl. at ¶ 10.

to an employee." 29 U.S.C. § 203(a). Plaintiff has established that the defendants had control over the terms and conditions of plaintiff's employment. Therefore, both the individual and corporate defendant are employers subject to FLSA liability.

c. <u>Sufficiency of Allegations</u>

Plaintiff alleges in her complaint that defendants did not pay her compensation at the proper minimum wage rate. Generally, the regular hourly rate is determined by dividing the amount paid in any workweek by the total number of hours actually worked. However, plaintiff alleges only that she worked for defendants for two weeks at the rate of $300.00 per week and did not submit <u>any</u> evidence as to the hours she worked for defendants. She simply claims she should have been paid $320.00 per week, presuming 40 hours of work at the minimum wage rate of $8.00 per hour. Pl.'s Mem. at 9. Without evidence of the number of hours worked each week, the Court cannot determine the hourly rate received by plaintiff. Particularly given that plaintiff worked as a salesperson, the Court has no basis to infer that she worked more than 37.5 hours per week to trigger a minimum wage violation ($300/$8.00 per hour = 37.5 hours). Therefore, I cannot find that plaintiff was paid less than the minimum wage.

Accordingly, I recommend denying plaintiff's motion for

default judgment for violation of the minimum wage provisions of the FLSA.[2]

### 2.   New York Labor Law

New York's Labor Law is the state analogue to the federal FLSA.  Although the Labor Law "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales," it otherwise mirrors the FLSA in compensation provisions regarding minimum wages.  Yin v. Kim, 2008 WL 906736, at *4 (E.D.N.Y. 2008); see N.Y. Lab. Law § 652 (minimum hourly wage); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(a)(1) (same).  Critically, the New York Labor Law also expressly provides that employees are entitled to recover all unpaid wages.  See Kalloo v. Unlimited Mechanical Co. of N.Y., 977 F. Supp. 2d 187, 203-04 (E.D.N.Y. 2013); Rosas v. Subsational, 2012 WL 4891595, at *4 (E.D.N.Y. Sept. 2012), adopted by, 2012 WL 4866678 (E.D.N.Y. 2012); Yin v. Kim, 2008 WL 906736, at *6 (E.D.N.Y. 2008); Jowers v. DME Interactive Holdings, Inc., 2006 WL 1408671, at *9 (S.D.N.Y. 2006); N.Y. Lab. Law §§ 198, 663.

Since plaintiff alleges in the complaint that she was not paid for one week of work, defendants are liable under the Labor

---

[2] The damages plaintiff seeks under the FLSA for unpaid minimum wages is $20 for plaintiff's first week of work and $320 for plaintiff's second week of work.  As discussed below, this Court recommends awarding plaintiff $300 in unpaid wages under the New York Labor Law for plaintiff's second week of work for which she was not paid.  Thus, if there were FLSA liability found, plaintiff would be owed an additional $40.

Law for plaintiff's unpaid wages.

III.  <u>Damages</u>

    A.  <u>New York Labor Law</u>

    Plaintiff states in her affidavit and testified at the inquest hearing that her weekly salary was $300 but defendants failed to pay her for one week of work.  Drice Decl. at ¶ 2, 16, 17, 21; Hearing Tr. (ct. doc. 16) at 4, 5, 10, 14.  Therefore, I recommend awarding plaintiff $300 for unpaid wages under the New York Labor Law.

    1.  <u>Liquidated Damages</u>

    Liquidated damages are available under New York law at a rate of 100% of the underpayments.  N.Y. Lab. Law § 663.  Under the Labor Law, the burden is on the employer to prove a good faith basis to believe that its underpayment of wages was in compliance with the law to avoid imposition of liquidated damages.  <u>See</u> <u>id.</u>  As the defendants here have defaulted, they have not shown they acted in good faith.  <u>See</u>, <u>e.g.</u>, <u>Blue v. Finest Guard Servs, Inc.</u>, 2010 WL 2927398, at *11 (E.D.N.Y. 2010) (finding that a defendant's default, in itself, may suffice to support a claim for liquidated damages); <u>Dong v. CCW Fashion Inc.</u>, 2009 WL 884680, at *4-5 (S.D.N.Y. 2009).  Therefore, I recommend awarding plaintiff $300 in liquidated damages.

    2.  <u>Prejudgment Interest</u>

    Plaintiff also seeks prejudgment interest on unpaid wages owed under the Labor Law.

Section 5001 of New York's Civil Practice Law and Rules governs the calculation of prejudgment interest for violations of the Labor Law.  See Pavia v. Around the Clock Grocery, Inc., 2005 WL 4655383, at *8 (E.D.N.Y. 2008).  Courts ordinarily apply a statutory interest rate of nine percent per annum in determining prejudgment interest under New York law. N.Y. C.P.L.R. § 5004. Accordingly, I recommend awarding prejudgment interest on $300 in the amount of $505.42 from May 9, 2014 through March 21, 2016 ($0.74 * 683 days) and at the rate of $0.74 per day thereafter until the entry of judgment.

B.   Compensatory Damages under Title VII and the NYCHRL

1.   Back Pay

Plaintiff seeks $2,240.00 in back pay for 7 weeks while plaintiff was unemployed, from May 12, 2014 to June 30, 2014.[3] See Wolnowski Decl. (ct. doc. 10) at ¶ 8.  Generally, in order to recover back pay, plaintiff must demonstrate that she was constructively terminated.  See Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 144-45 (2d Cir. 1993).  To maintain a claim for constructive discharge, plaintiff must demonstrate that defendants created working conditions that were "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Stetson v. NYNEX Serv. Co., 995 F.2d 355, 361 (2d Cir. 1993); see Pa. State Police v. Suders, 542

---

[3] In counsel's memorandum of law, he mistakenly refers to 8 weeks that plaintiff was out of work.  Pl.'s Mem. at 13.

U.S. 129, 146-47 (2004).  I find that the evidence submitted is
sufficient to sustain a claim for constructive discharge.  See
Rodriquez, 2014 WL 1347369, at *4.

The purpose of a back pay award is to "make persons whole
for injuries suffered through past discrimination."  Reed v. A.W.
Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996).  Under Title
VII, an award of back pay "is the rule, not the exception."
Carrero v. New York City Housing Auth., 890 F.2d 569, 580 (2d
Cir. 1989); 42 U.S.C. § 2000e-5(g)(1).  Back pay is also
available under the NYCHRL.  See N.Y.C. Admin. Code 8-502(a).
Back pay is calculated from the date of the discriminatory
practice to the date of entry of judgment.  See Sands v. Runyon,
28 F.3d 1323, 1327 (2d Cir. 1994).

Plaintiff calculated back pay based on the minimum wage for
7 weeks while plaintiff "was out of work."  Wolnowski Decl. at
¶ 8.  However, plaintiff did not submit any evidence that she was
unemployed for 7 weeks.  Rather, at the inquest hearing,
plaintiff testified that she was unemployed for "[a] little over
a month."  Hearing Tr. at 15.  Accordingly, I recommend awarding
plaintiff back pay for 5 weeks in the amount of $1,500.00 ($300
per week * 5 weeks).

2.  Emotional Distress

Plaintiff further seeks compensatory damages in the amount
of $60,000 for emotional distress.  Although Title VII limits the
amount of damages recoverable based on the size of the employer,

-16-

the NYCHRL does not impose such limits.  See Rodriguez, 2014 WL 1347369, at *6 n.4.

Plaintiff states that as a result of defendants' conduct, she "felt then, and still continue[s] to feel, offended, disturbed, and humiliated by the Defendant Valerio's actions.  I have suffered, and continue to suffer, from severe anxiety and depression as a result of Defendants' sexual harassment and discrimination during my employment."  Drice Decl. at ¶ 25; see Hearing Tr. at 15-19.  In addition, plaintiff testified that following this episode, there were days when she felt worthless and could not get out of bed.  See Hearing Tr. at 18.  Her emotional distress affected her ability to eat and sleep.  See id. at 19.  Plaintiff did not submit any medical or mental health records in support of her claim for damages.

For garden variety emotional distress claims, courts have awarded damages ranging from $5,000 to $35,000.  See Rodriguez, 2014 WL 1347369, at *6; Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 153 (E.D.N.Y. 2013).  "'In such cases, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury.'"  Rodriguez, 2014 WL 1347369, at *6 (quoting Khan v. Hip Centralized Lab. Servs. Inc., 2008 WL 4283348, at *11 (E.D.N.Y. 2008)).  "'The middle of the spectrum consists of significant ($50,000 up to $100,000) and substantial emotional

distress claims ($100,000).  These claims differ from the garden-
variety claims in that they are based on more substantial harm or
more offensive conduct, are sometimes supported by medical
testimony or evidence, evidence of treatment by a healthcare
professional and/or medication, and testimony from other,
corroborating witnesses.'"  Id. (quoting Rainone v. Potter, 388
F. Supp. 2d 120, 122-23 (E.D.N.Y. 2005)).  In contrast,
"egregious" emotional distress claims "where courts have upheld
awards of over $100,000, 'have only been warranted where the
discriminatory conduct was outrageous and shocking or where the
physical health of plaintiff was significantly affected.'"  Id.
(quoting Rainone, 388 F. Supp. 2d at 123).

     This Court finds plaintiff's testimony regarding her
emotional distress to be credible.  However, despite the
substantial distress she may have felt at the time, the duration
of her employment was brief.  She did not testify to seeking
professional help or having prolonged, severe symptoms.  Thus, I
respectfully recommend awarding plaintiff $20,000 for emotional
distress.  See Rodriquez, 2014 WL 1347369, at *7 (recommending
award of $10,000 for emotional distress damages where employment
was brief); Joseph, 970 F. Supp. 2d at 154 (recommending award of
$30,000 for emotional distress damages); Manson v. Friedberg,
2013 WL 2896971, at *7 (S.D.N.Y. 2013) (awarding $10,000 in
emotional distress damages where plaintiff did not address
severity or duration of emotional distress); Jowers v. DME

-18-

Interactive Holdings, Inc., 2006 WL 1408671, at *4 (S.D.N.Y.
2006) (adopting recommendation of $15,000 for emotional
distress); Fowler v. New York Transit Auth., 2001 WL 83228, at
*13 (S.D.N.Y. 2001) (reducing award for emotional distress from
$50,000 to $25,000 where plaintiff "did not present any evidence
detailing the duration or magnitude of his emotional injuries"
nor present evidence of medical or psychological treatment).

   3. Interest

  Plaintiff seeks prejudgment interest on her award of back
pay.  Although interest on compensation for lost wages is
generally awarded under Title VII, interest on awards for
emotional distress is not awarded "'when it is unnecessary to
make the plaintiff whole.'"  Rodriguez, 2014 WL 1347369, at *7 &
n.5 (quoting Reiter v. Metropolitan Transp. Auth. of N.Y., 2003
WL 22271223, at *16 (S.D.N.Y. 2003)).  An award of prejudgment
interest on plaintiff's back pay award is appropriate here
"'because it serves to compensate the plaintiff for loss of the
use of money wrongfully withheld.'"  Id. at *7 (quoting Thomas v.
iStar Fin. Inc., 508 F. Supp. 2d 252, 264 (S.D.N.Y. 2007)).
Likewise, an award of interest is appropriate under the NYCHRL.
See Sass v. MTA Bus Co., 6 F. Supp. 3d 238, 258-59 (E.D.N.Y.
2014).  "Where 'a judgment is based on violations of both federal
and state law, courts in this circuit uniformly have applied a
federal interest rate, most commonly based on the average rate of
return on one-year Treasury bills for the relevant time period.'"

Rodriquez, 2014 WL 1347369, at *7 (quoting Thomas, 508 F. Supp.
2d at 264); see Joseph, 970 F. Supp. 2d at 151.  Interest is
calculated from the time plaintiff's claim arose until the entry
of judgment.  See Rodriquez, 2014 WL 1347369, at *7; Joseph, 970
F. Supp. 2d at 151.  Since I have already recommended an award of
interest for one week of unpaid wages, I recommend awarding
interest only on $1,500.00 of back pay after plaintiff's
termination.  Interest should be calculated based on the average
annual Treasury bill rate of interest and I recommend that it be
calculated from the mid-point of the 5 week period during which
plaintiff was unemployed or May 29, 2014, to the entry of
judgment.  The rate on the one year Treasury bill on May 29, 2014
was 0.10%.  See
http://www.federalreserve.gov/releases/h15/20140602/.  Therefore,
compound interest from May 29, 2014 to March 21, 2016 is due in
the amount of $2.73 and at a daily rate of $0.004 thereafter
until the entry of judgment.

Since the Court recommends an amount for emotional damages
designed to make plaintiff whole, I recommend denying plaintiff's
request for interest on that award.  See Rodriquez, 2014 WL
1347369, at *7; Augustin v. Jablonsky, 819 F. Supp. 2d 153, 180
(E.D.N.Y. 2011).

IV.  Attorneys' Fees

A "prevailing party" in a Title VII action is entitled to an award of reasonable attorneys' fees and costs.  See 42 U.S.C. § 2000e-5(k).  Attorneys' fees are also available under the NYCHRL.  See NYC Admin. Code § 8-502(f).

The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee."  Hensley v. Eckerhart, 461 U.S. 424, 433, 1940 (1983); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d 182, 188-90 (2d Cir. 2008); see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551-53 (2010) (discussing lodestar methodology in determining attorneys' fees to be awarded to prevailing party).  In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.  See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985).  If any expenditure of time was unreasonable, the court should exclude these hours from the calculation.  See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133.  The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to

-21-

severable unsuccessful claims." Quaratino v. Tiffany & Co., 166
F.3d 422, 425 (2d Cir. 1999).  A party seeking attorneys' fees
bears the burden of supporting its claim of hours expended by
accurate, detailed and contemporaneous time records.  New York
State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136,
1147-48 (2d Cir. 1983).

A reasonable hourly rate is "the rate a paying client would
be willing to pay," "bear[ing] in mind that a reasonable paying
client wishes to spend the minimum necessary to litigate the case
effectively." Arbor Hill, 522 F.3d at 190; see Perdue, 559 U.S.
at 551; Bergerson v. N.Y. State Office of Mental Health, Cent.
N.Y. Psychiatric Center, 652 F.3d 277, 289 (2d Cir. 2011).  The
reasonable hourly rates should be based on "rates prevailing in
the community for similar services of lawyers of reasonably
comparable skill, experience, and reputation." Cruz v. Local
Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing
Blum v. Stenson, 465 U.S. 886, 894 (1984)); see Perdue, 559 U.S.
at 551.  Determination of the prevailing market rates may be
based on evidence presented or a judge's own knowledge of hourly
rates charged in the community.  Farbotko v. Clinton Cty. of
N.Y., 433 F.3d 204, 209 (2d Cir. 2005).  The "community" is
generally considered the district where the district court sits.
See Lochren v. Cty. of Suffolk, 344 Fed. App'x 706, 708 (2d Cir.
2009); Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d
Cir. 2009).

Plaintiff seeks fees in the amount of $3,500 based on 10 hours spent by counsel at the rate of $350.00 per hour. Wolnowski Decl. at ¶ 19.  The "range of 'reasonable' attorney fee rates varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." Siracuse v. Program for the Dev. of Human Potential, 2012 WL 1624291, at *30 (E.D.N.Y. 2012); Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 298-300 (E.D.N.Y. 2012) (size of the firm a consideration).  The range of rates that courts in this district have determined to be reasonable in civil rights cases has varied from judge to judge.  Courts have recognized ranges in this district of "$300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." Struthers v. City of New York, 2013 WL 5407221, at *7 (E.D.N.Y. 2013); Hugee, 2012 WL 1096086, at *11-*13 (citations omitted) (citing cases).  Courts have recently approved associate rates of between $150 and $300 per hour.  See e.g., Rickettes v. Turton, 2015 WL 3868070, at *12 (E.D.N.Y. 2015) (awarding associates who had worked for 4 or 5 years $200 per hour); Sass, 6 F. Supp. 3d at 263 (awarding senior associate $275 per hour, mid-level associate $200 per hour and junior associates $175 per hour); Spence v. Ellis, 2012 WL 7660124, at *5 (E.D.N.Y. 2012) (awarding junior associate $150 per hour).  In contrast, a court awarded the amount sought by counsel here, $350 per hour, to a highly respected civil rights

attorney with thirteen years of experience.  See Struthers, 2013
WL 5407221, at *8 (awarding rate of $350 per hour for solo
practitioner); see also Mary Jo C. v. Dinapoli, 2014 WL 7334863,
at *6–*7 (E.D.N.Y. 2014) (awarding fees at a rate of $350 per
hour to attorney with over 30 years of experience).

Mr. Wolnowski is a 2008 law school graduate but has worked
in employment law only since early 2014.  Hearing Tr. at 20.
After considering counsel's experience, I find, based on my
knowledge of billing rates in this district, that a reasonable
rate for Mr. Wolnowski is $250 per hour.  Mr. Wolnowski has not
reached the stature of other civil rights attorneys who were
awarded higher rates.

As for the amount of time counsel spent working on this
case, ten hours is very reasonable.  Counsel states that his
calculation of hours is based on contemporaneous time records and
this time was spent drafting the EEOC charge and complaint,
meeting with his client and preparing the default submissions.
See Wolnowski Decl. at ¶ 20; Hearing Tr. at 20-22.

Therefore, I recommend awarding plaintiff attorneys' fees in
the amount of $2,500 ($250 per hour * 10 hours).

In addition to attorneys' fees, plaintiffs are entitled to
"those reasonable out-of-pocket expenses incurred by attorneys
and ordinarily charged to their clients."  LeBlanc-Sternberg v.
Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Plaintiffs seek

costs in the amount of $624.33 for the court filing fee, service of process fees and postage.  See Wolnowski Decl. at ¶ 21.  I find that these costs are reasonable and recoverable.

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that the Court award plaintiff judgment against defendants My Merchant Services, LLC and Jose A. Valerio in the amount of $25,432.48, including unpaid wages in the amount of $300.00, back pay in the amount of $1,500.00, damages for emotional distress in the amount of $20,000, pre-judgment interest on unpaid wages in the amount of $505.42 from May 9, 2014 through March 21, 2016 and at the rate of $0.74 per day thereafter until the entry of judgment, pre-judgment interest on back pay from May 29, 2014 to March 21, 2016 in the amount of $2.73 and at a daily rate of $0.004 thereafter until the entry of judgment, attorneys' fees of $2,500 and costs of $624.33.

This report and recommendation will be filed electronically and copies sent by mail to the defendants on this date.  Any objections to this Report and Recommendation must be filed by March 21, 2016 and a courtesy copy sent to Judge Brodie.  Failure to file objections within the specified time waives the right to

appeal.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:     Brooklyn, New York
           March 4, 2016

                                 _____/s/_____
                                 MARILYN D. GO
                                 UNITED STATES MAGISTRATE JUDGE